STATE OF NORTH CAROLINA v. REV. J. E. ORANGE

No. 741SC404

(Filed 3 July 1974)

1. **Indictment and Warrant § 6— arrest warrant — sufficiency of affidavit to support**

   An affidavit which stated that the affiant, the county sheriff, ordered a group to disperse from the county courthouse steps and that the affiant personally witnessed defendant's subsequent refusal to comply with the order was sufficient to support a warrant for defendant's arrest.

2. **Constitutional Law § 18; Disorderly Conduct § 1— constitutionality of portion of disorderly conduct statute**

   G.S. 14-288.4(a)(2) which defines disorderly conduct as the use of any utterance, gesture, display or abusive language intended and likely to provoke violent retaliation and thereby cause a breach of the peace, when construed to prohibit only words and conduct likely to provoke ordinary men to violence, is not unconstitutionally vague under the First Amendment.

3. **Constitutional Law § 30— belated motion for free transcript**

   Where defendant failed to make a timely request for a free transcript, he could not complain on appeal of the trial court's denial of his belated motion to be declared indigent.

4. **Criminal Law § 50— use of word "trying" — no opinion testimony**

   The trial court did not err in allowing testimony of the sheriff and police captain describing a crowd as "trying" to push its way into the courthouse and police officers as "trying" to keep members of the crowd, including defendant, out of the courthouse, since the witnesses used the word in a purely descriptive sense, describing physical actions rather than the witnesses' opinions as to motivation.

5. **Disorderly Conduct § 2— refusal to obey order to disperse — sufficiency of evidence**

   In a prosecution for a violation of G.S. 14-288.5 evidence was sufficient to be submitted to the jury where it tended to show that a law enforcement officer responsible for keeping the peace had reason-

able grounds to believe that disorderly conduct by an assemblage of three or more persons was occurring at the time he issued the command to disperse, that the command was given in a manner reasonably calculated to be communicated to the assemblage of which defendant was a part, and that defendant wilfully refused to obey the command.

ON *Certiorari* to review defendant's trial before *Copeland, Judge,* 10 September 1973 Session of Superior Court held in CHOWAN County.

Defendant was charged in a warrant with unlawfully and willfully failing and refusing to disperse when commanded to do so by Sheriff Troy Toppin, a law enforcement officer responsible for keeping the peace, when said officer reasonably believed that disorderly conduct was occurring by the assemblage of three or more persons, a misdemeanor violation under G.S. 14-288.5. After trial and conviction in the district court, defendant appealed to the superior court, where he again pled not guilty. The State offered evidence tending to show: On the morning of 5 June 1973, approximately 30 Negroes were arrested in connection with a protest in Chowan County. They were taken to the "auditorium or seating area" of the Chowan County courthouse, in Edenton, N. C., for processing. While the arrested persons were still inside, approximately 30 or 35 additional Negroes approached the courthouse chanting "we want to get in the courthouse, we want to get in." Defendant, a former professional football player who was 30 years old, weighed 368 pounds, and was six feet three inches tall, was at the front of the crowd. When the crowd, which covered the entire front portion of the courthouse, reached the bottom of the three steps leading up to the front door, their path was blocked by several police officers. The members of the crowd, including the defendant, pushed against the riot sticks of the officers. Several times, Chowan County Sheriff Troy Toppin asked the group to disperse. Eight or ten persons obeyed, but twenty-one remained, chanting "we want to be arrested, go ahead and arrest us"; and "why can't we come in, we want to come in." These persons, including the defendant, who had remained at the front of the group, were then arrested. Although during the commotion it appears that defendant at one time slipped on the courthouse steps and fell to his knees, he received no injury, and the confrontation ended essentially without violence. The defendant testified to a similar version of events, although he stated that he had never pushed against the officers stationed at the courthouse door. He offered

evidence to show that the group was seeking entry into the courthouse in order to protest and to investigate accusations of police brutality towards the previously-arrested Negroes.

The jury found defendant guilty as charged, and judgment was entered imposing an active six-month prison sentence. Defendant appealed. To permit perfection of the appeal, this Court subsequently issued writ of certiorari.

*Attorney General Robert Morgan by Assistant Attorney General Ralf F. Haskell for the State.*

*Paul, Keenan & Rowan by Jerry Paul for defendant appellant.*

PARKER, Judge.

[1] Defendant assigns error to the trial court's failure to grant his pretrial motion to quash the warrant. First, defendant argues that the affidavit in support of a warrant failed to indicate to the magistrate how the affiant became aware of the fact of defendant's alleged criminal activity. This contention is feckless. The affidavit states that Chowan County Sheriff Troy Toppin, the affiant himself, gave the order to disperse, and it is clear that he personally witnessed defendant's subsequent refusal to comply.

[2] Next, defendant contends that the warrant charges him with violation of an unconstitutional statute. This contention is also without merit. Defendant was charged with failing to disperse after having been commanded to do so by a law enforcement officer responsible for keeping the peace who had reasonable grounds to believe that disorderly conduct by an assemblage of three or more persons was occurring, a violation of G.S. 14-288.5. "Disorderly conduct" is in turn defined by the five subparagraphs of G.S. 14-288.4(a). G.S. 14-288.4(a)(3), (4) and (5) deal with behavior at public or private educational institutions and are hence irrelevant to the present inquiry. The remainder and relevant portions of G.S. 14-288.4(a) as amended in 1971, provide as follows:

"§ 14-288.4. *Disorderly conduct.*— (a) Disorderly conduct is a public disturbance intentionally caused by any person who:

"(1) Engages in fighting or other violent conduct or in conduct creating the threat of imminent fighting or other violence; or

> "(2) Makes or uses any utterance, gesture, display or abusive language which is intended and plainly likely to provoke violent retaliation and thereby cause a breach of the peace;"

Defendant offers no attack on G.S. 14-288.4(a)(1), the constitutionality of which would appear manifest. Defendant does contend that G.S. 14-288.4(a)(2) is unconstitutionally vague under the First Amendment. In *State v. Summrell*, 282 N.C. 157, 192 S.E. 2d 569, however, our Supreme Court dealt with this very objection. In *Summrell*, the trial judge, dealing with G.S. 14-288.4(a)(2) as written prior to its revision in 1971 Session Laws, Chap. 668, Sec. 1, construed G.S. 14-288.4(a)(2) to prohibit only words and conduct likely to provoke ordinary men to violence. In approving the trial judge's construction, our Supreme Court said (282 N.C. at p. 168):

> "There can be do doubt that the General Assembly intended to prohibit 'fighting words,' words tending to cause an immediate breach of the peace wilfully spoken in a public place, and that [the trial judge's] interpretation accurately expressed the legislative purpose. At this point we note that the General Assembly by N. C. Sess. Laws, Ch. 668, § 1 (1971) . . . rewrote Section (a)(2) so that it now reads '[m]akes or uses any utterance, gesture, display or abusive language which is intended and plainly likely to provoke violent retaliation and thereby cause a breach of the peace. . . . ' There is no substantial difference between the 1971 revision and the 1969 version of Section (a)(2) as [the trial judge] construed it."

Defendant's additional argument that this language from *Summrell* is no longer constitutional under *Gooding v. Wilson*, 405 U.S. 518, 31 L.Ed. 2d 408, 92 S.Ct. 1103, is wide of the mark; *Gooding* was decided before and discussed in *Summrell*.

[3] Defendant next contends that the superior court erred in denying his motion to be declared indigent and be provided with a free transcript of the district court proceedings. The superior court denied defendant's motion on grounds that "the defendant is guilty of laches and has failed to move in apt time." We agree with the trial court. Judgment in the district court imposing suspended sentence was entered on 31 July 1973. Defendant then appealed to the superior court for trial de novo, and on 22 August 1973 defendant's attorney telephoned and later that day

met with the district attorney and the superior court judge assigned to hold court in Chowan County in September. At this meeting, defendant's counsel failed to request either indigency status or a free transcript for his client, and did not do so until, after one continuance, defendant's case came on for trial on 11 September 1973. Defendant failed to make a timely request for a free transcript and cannot now complain of the trial court's denial of his belated motion. See *State v. Clark,* 22 N.C. App. 81, 206 S.E. 2d 252.

[4]  Defendant assigns error to the admission,· over objection, of several portions of the testimony of Sheriff Toppin and Police Captain C. A. Williams, describing the crowd as "trying" to push its way into the courthouse and the police officers as "trying" to keep members of the crowd, including the defendant, out of the courthouse. It is clear that the witnesses used the word "trying" in a purely descriptive sense, describing physical actions rather than the witnesses' opinion as to motivation.

[5]  Defendant assigns error to the trial court's denial of his motion for nonsuit at the close of all the evidence. In our opinion, the evidence, when taken in the light most favorable to the State, was sufficient to require submission of the case to the jury as to defendant's guilt or innocence of the offense with which he was charged. As pointed out in the opinion by Chief Judge Brock in *State v. Clark, supra,* "[u]nder G.S. 14-288.5, the failure to disperse when commanded by an officer would be an offense where no disorderly conduct was occurring so long as it is shown on trial that the officer had reasonable grounds to believe that disorderly conduct was occurring by an assemblage of three or more persons." Here, the evidence was amply sufficient to support a jury finding that Sheriff Toppin, a law enforcement officer responsible for keeping the peace, had reasonable grounds to believe that disorderly conduct by an assemblage of three or more persons was occurring at the time he issued the command to disperse, that the command was given in a manner reasonably calculated to be communicated to the assemblage of which defendant was a part, and that defendant willfully refused to obey the command. These were all of the elements required to support the jury's verdict finding defendant guilty as charged.

Finally, defendant assigns error to several portions of the jury charge, contending that the trial judge instructed the jury

as to unconstitutional statutes. Defendant's arguments hereunder, however, are essentially those referred to earlier in our discussion of the motion to quash the warrant, and need not be repeated here. Considered as a whole, the charge was free from prejudicial error.

We have also carefully examined all of defendant's remaining exceptions and assignments of error which are brought forward in his brief, and in the trial and judgment imposed we find

No error.

Chief Judge BROCK and Judge BALEY concur.